**FILED**

FEB 2 1 2013

DAVID CREWS, CLERK

BY _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN A. HAWN                                                                          PLAINTIFF

VERSUS                                                            NO. 1:13CV36-A-S

CHRISTOPHER (C.G.) HUGHES, and
OFFICERS X, Y and Z, in their individual capacities                    DEFENDANTS

JURY TRIAL DEMANDED

## COMPLAINT

This is an action to recover actual and punitive damages for use of excessive force and unreasonable seizure of the person in violation of the Fourth Amendment of the United States Constitution. Claims are also made against Officers X, Y and Z, who are supervisory officials of the Mississippi Highway Patrol, but whose true identity can be known only after discovery is conducted. The following facts support this action:

1.

Plaintiff, JOHN A HAWN, is an adult resident citizen of 112 DR 1774, Saltillo, Lee County, Mississippi 38866. Plaintiff is a self-employed carpenter and is a military veteran of fourteen (14) years of active military service in the United States Army.

2.

Defendant, CHRISTOPHER (C.G.) HUGHES, at all relevant times, was an officer of the Mississippi Highway Patrol, also known as the Mississippi Department of Public Safety. The Mississippi Highway Patrol is Mississippi's most elite law enforcement agency. Mississippi Highway Patrol officers receive training which is as rigorous, or more rigorous, than the training received by recruits of the United States Marines.

Defendants, X, Y and Z, are supervisory officials of the Mississippi Highway Patrol who had actual knowledge of Defendant Hughes propensity for violence, and actual knowledge of the likelihood that Defendant Hughes would inflict such violence upon motorists. Defendants X, Y and Z, through willful indifference to the safety rights of the persons traveling on public highways, had failed to investigate Defendant Hughes' known propensity for violence and the failure to so investigate or discipline Defendant Hughes was the proximate cause of the injury inflicted on Plaintiff. These Defendants will be served with process at a later time after discovery to determine their identity.

3.

At all relevant times, all Defendants acted under color of state law. This action is authorized by 42 U.S.C. § 1983.

4.

This Court has civil rights jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1331 for violation of the Fourth Amendment to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claim for assault and battery and abuse of process.

## The Beating

5.

On or about July 16, 2012, Plaintiff left the construction project, where he was working as a carpenter, and proceeded onto State Park Road driving toward Mississippi Highway 178 near Mooreville, Mississippi. At the intersection of State Park Road and Highway 178, Defendant Hughes and Mississippi Highway Patrol Officer Jody Berryhill had established a road block.

6.

Plaintiff was unable to bring his van to complete stop at the roadblock. He drove at a slow speed, approximately twenty (20) miles per hour, around the roadblock. In a state of rage, Defendant

2

Hughes immediately drove to the front of Plaintiff's vehicle. When Plaintiff's vehicle stopped, Defendant Hughes savagely beat him in the head and in the ribs. The beating caused substantial injuries, including a fractured jaw. Following the beating, Defendant Hughes directed Officer Jody Berryhill, his subordinate, to destroy a video tape in Defendant Hughes' patrol vehicle which may have recorded the beating. Defendant Hughes then transported Plaintiff to the Lee County Jail where Plaintiff was incarcerated for five (5) days, until he was released without bail. While in the custody of the Lee County Sheriff's Department, Plaintiff had been transported to the North Mississippi Medical Center where x-rays diagnosed a fractured jaw. While Plaintiff was in the Lee County Jail, a Mississippi Highway Patrol Officer and a Lee County Correctional Officer photographed his face, documenting his injuries. It is probable that the Lee County officer or the Mississippi Highway Patrol officer reported the beating to the Federal Bureau of Investigation.

7.

Without a reasonable basis, Defendant Hughes charged Plaintiff with many misdemeanor charges, and also with two felony charges. Defendant Hughes made these charges against Plaintiff pursuant to this customary practice, known to Defendants X, Y and Z, of charging arrestees whom he had assaulted, with criminal charges, so as to have a bargaining tool to use against any arrestee who might attempt to bring a civil suit or otherwise seek redress.

8.

Before the misdemeanor charges were prosecuted, Defendant Hughes was charged by the United States for beating another arrestee, Carol Wampler-George. Following this charge, the misdemeanor charges against Plaintiff were dismissed. Plaintiff's counsel has written the Lee County District Attorney inquiring about the status of the felony charges, see letter attached hereto as Exhibit "A." Plaintiff's counsel believes that because of the federal indictment against Defendant Hughes,

3

these felony charges will not be pursued. Except for the federal charge, Defendant Hughes would have

pursued felony charges against Hawn.

## Liability of Officers X, Y and Z

9.

At least since 2007, Defendant Hughes' supervisory officials, Defendants X, Y and Z, had actual

knowledge of Defendant Hughes' propensity for violence and had actual knowledge that he posed a risk

to the safety of citizens. Defendants X, Y and Z had this knowledge because of numerous incidents

of abuse of citizens by Defendant Hughes. Defendants X, Y and Z knew, or, except for willful

indifference, would have known of the following incidents of violence:

A.    Carol Wampler-George

On or about October 14, 2007, Officer Hughes assaulted Carol Wampler-George at the
Lee County Jail by "throwing her to the concrete floor, striking her in the face against
the floor, stomping her head against the floor and kicking her with his feet." This
beating was recorded by Lee County correctional officers and is subject to a pending
criminal charge against Officer Hughes in *United States v. Hughes*, Cause No. 1:12CR132.
See information attached hereto as Exhibit "B."

B.    William T. Brann

On or about December 30, 2007, several Mississippi Highway Patrol officers
apprehended William T. Brann at a roadblock. Officer Hughes was called to the scene
because of Brann's unruly behavior. Officer Hughes beat Brann in the head repeatedly
and fractured his skull causing permanent brain damage. Contrary to public policy,
under which tax payers of the state of Mississippi should know about the misdeeds of
public employees, the Mississippi Highway Patrol and the Mississippi Department of
Public Safety entered into a confidential settlement agreement, so that the Mississippi
Department of Public Safety could keep Mississippi citizens from being aware of the
amount of money that Officer Hughes' brutality was costing.

C.    Bryan Lindsey

On or about October 17, 2010, Bryan Lindsey was arrested by several Mississippi
Highway Patrol officers, including Officer Hughes. In response to Lindsey's questions
about why he was being arrested, and in response to Lindsey's protest about being
transported to the jail, Officer Hughes rammed Lindsey's head into a police vehicle,
inflicting a deep cut on the front of Lindsey's head.

4

D.   Ronnie Horton

On August 4, 2011, Ronnie Horton, a fifty-five (55) year old resident of Lee County, Mississippi, with no criminal record, and who is a chair person of the Board of Deacons over several churches, was headed home from Tupelo, Mississippi, when he lost consciousness because of his high blood pressure or other medical ailments. Officer Hughes appeared on the scene and assumed that Horton was drunk. Officer Hughes beat Horton in the mouth, causing profound bleeding onto his shirt. When Horton asked Officer Hughes why he hit him, Officer Hughes responded, "Did you want some more?" Officer Hughes then incarcerated Horton in the Lee County Jail. During his brief time of incarceration, Horton was interviewed by two officers, at least one of whom was a Mississippi Highway Patrol Officer. Horton told these officers about the assault.

E.   Heather Seawright

On or about April 28, 2012, a Mississippi Highway Patrol officer arrested Heather Seawright and carried to her to the Lee County Jail. At the jail, in response to Seawright's questioning the reason for her arrest, and possibly engaging in other unruly behavior, Officer Hughes struck Seawright in the face with his flashlight and smashed her head against a glass wall at the jail. Contrary to public policy, Seawright and Officer Hughes entered into a confidential settlement agreement under which neither the Mississippi Highway Patrol nor the Lee County Sheriff's Department could be sued for what Officer Hughes did to Seawright at the Lee County Jail. See, Waiver of Liability and Release, attached hereto as Exhibit "C."

F.   Matilda Moore

On or about May 19, 2012, Officer Hughes arrested Matilda Moore, a public school teacher in the Tupelo Public School System who was a sixty-three (63) year old grandmother and had just left a Tupelo High School graduation ceremony. Moore had been a passenger in a car stopped at a Highway Patrol roadblock, and in response to Officer Hughes' questions, she told him she had drank one glass of wine. Officer Hughes took Moore to the Lee County Jail where he threw her up against the wall, inflicted substantial bruises to her body and threatened to break her arm. Moore protested to the Mississippi Highway Patrol about her treatment in the letter, attached hereto as Exhibit "D."

10.

The above incidents of violence were also coupled with the fact that Defendant Hughes had undergone a sudden huge muscular growth. Because of the combination of the huge muscular growth and the sudden rages and assaults, Defendants X, Y and Z would have known that Defendant Hughes

5

was a likely user of illegal steroids or of human growth hormone, or that Defendant Hughes had suffered from emotional illness. Defendants X, Y and Z never investigated the reasons for Defendant Hughes' violent and bizarre behavior, never conducted any drug test of Defendant Hughes, and were, thus, willfully indifferent, both to Defendant Hughes' best interest and to the safety of Mississippi motorists. A failure to make such an investigation when officers knew about Defendant Hughes' rages and knew about his sudden muscular growth, represented a willful indifference to the safety of citizens on Mississippi highways. The safety of citizens on highways is the very mission of the Mississippi Highway Safety Patrol, and willful indifference to citizens' safety caused Plaintiff's injury..

### Damages

11.

Plaintiff suffered fractures to his jaw. Surgery was prescribed by Plaintiff's physician, Dr. Leland Chrisman. Plaintiff suffered intense pain, because he could not afford to have the surgery recommended by Dr. Chrisman. Plaintiff also suffered loss of consciousness, contusions and abrasions to both ears. Plaintiff's ribs were bruised, particularly on the right side.

12.

Misdemeanor charges against Plaintiff has been dismissed. See Exhibit "E." Defendant Hughes has attempted to prosecute Plaintiff in the Lee County Circuit Court for a felony charge. The felony prosecution represents abuse of process, since it was not done for any legitimate purpose, but was done for the purpose of precluding Plaintiff from pursuing any claim for violation of his rights.

13.

Defendants are liable to Plaintiff for:

A.    Unreasonable seizure of the person in violation of United States Constitution, Amendment Four;
B.    Excessive force in violation of United States Constitution, Amendment Four;
C.    Assault and battery in violation of state law; and

6

D.     Abuse of process in violation of state law.

## REQUESTS FOR RELIEF

Plaintiff requests actual and punitive damages in an amount to be determined by a jury and for

reasonable attorneys' fees.

Respectfully submitted,

WAIDE & ASSOCIATES, P.A.

BY: _____
        JIM WAIDE
        MS BAR NO. 6857

WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802
TELEPHONE: 662-842-7324
FACSIMILE: 662-842-8056
EMAIL: waide@waidelaw.com

R. SHANE MCLAUGHLIN
MS BAR NO. 101185
MCLAUGHLIN LAW FIRM
POST OFFICE BOX 200
TUPELO, MS  38802-0200
TELEPHONE:  (662) 840-5042
FACSIMILE:  (662) 840-5043
EMAIL:  rsm@mclaughlinlawfirm.com

VICTOR I. FLEITAS, ESQ.
ATTORNEY AT LAW
POST OFFICE BOX 7117
TUPELO, MISSISSIPPI 38802-7117
EMAIL: fleitasv@bellsouth.net

Attorneys for Plaintiff

7

# WAIDE & ASSOCIATES, P.A.
## ATTORNEYS AND COUNSELORS AT LAW

JIM WAIDE
RON L. WOODRUFF
RACHEL PIERCE WAIDE

MAILING ADDRESS:
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802-1357
TELEPHONE: 662.842.7324
FACSIMILE: 662.842.8056
EMAIL: waide@waidelaw.com

STREET ADDRESS:
332 NORTH SPRING STREET
TUPELO, MISSISSIPPI 38804-1357

November 14, 2012

Trent Kelly
Assistant District Attorney
P.O. Box 7237
Tupelo, MS 38802-7237

Re:    John A. Hawn

Dear Trent:

Mississippi State Trooper Christopher Hughes arrested my client John A. Hawn on July 16, 2012 for DUI Third. Trooper Hughes beat Mr. Hawn severely, which resulted in a fracture to his right jaw, to which he has already incurred medical bills in the amount of $16,000.00. Trooper Hughes charged Mr. Hawn with DUI Third, assaulting a trooper and felony fleeing. Mr. Hawn was told in Justice Court that no charges would be brought there until his charges in Circuit Court were disposed of.

I called your office on Friday, October 19, 2012, and was informed that no indictment had been returned against Mr. Hawn. I was also informed that the Grand Jury had met in September.

I assume from these circumstances and from the fact that Mr. Hawn is now the subject of a federal information for another beating, that there will be no indictment returned against Mr. Hawn. If I am mistaken in this, would you please let me know? I have advised Mr. Hawn that in view of my office being told there is no pending indictment for him, that he did not need to appear further in Circuit Court until notified otherwise.

If I am mistaken and there is going to be an indictment returned against Mr. Hawn, would you please let me know so that I can have him appear voluntarily?

With kindest regards, I am

Sincerely yours,

JIM WAIDE

JDW/kd
cc:   Mr. James Hawn



**FILED**

OCT 2 5 2012

DAVID CREWS, CLERK
BY _V. Udgms_
Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.

CR. NO. 1:12 CR /3 ℓ

**CHRISTOPHER GARY HUGHES**

18 U.S.C. § 242

### INDICTMENT

The Grand Jury Charges That:

### COUNT ONE

1.   The Lee County Detention Center (LCDC) was in Tupelo, Mississippi, and housed arrestees and detainees for the Mississippi Department of Public Safety;

2.   Defendant Christopher Gary Hughes was employed as a State Trooper with the Mississippi Department of Public Safety.

3.   On October 14, 2007, defendant, Christopher Gary Hughes, transported Carol Wampler-George and detained her at the LCDC.

4.   On or about October 14, 2007, in the Northern District of Mississippi, the defendant, CHRISTOPHER GARY HUGHES, while acting under color of law, assaulted Carol Wampler-George by throwing her to the concrete floor, striking her face against the floor, stomping her head against the floor, and kicking her with his feet, without legal justification, causing bodily injury to her, and thereby willfully deprived her of a right secured and protected by the



Constitution and laws of the United States, that is, the right not to be subject to unreasonable

searches and seizures and the right to be free from excessive force, all in violation of Title 18,

United States Code, Section 242.

**A TRUE BILL:**

*/s/ Signature Redacted*
**FOREPERSON**

**UNITED STATES ATTORNEY**

# RECEIVED

OCT 2 5 2012

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

UNITED STATES OF AMERICA

CR. NO. 1:12 CR *132*

v.

18 U.S.C. § 242

CHRISTOPHER GARY HUGHES

## NOTICE OF PENALTIES

| | |
|---|---|
| NMT 10 years imprisonment | 18 U.S.C. § 242 |
| NMT $250,000 fine, or both | 18 U.S.C. 3571 |
| NMT 3 years supervised release | 18 U.S.C. § 3583(b)(2) |
| Mandatory $100 special assessment | 18 U.S.C. § 3013(a) |

ROBERT W. COLEMAN, II
Assistant United States Attorney
Mississippi Bar No.6368
900 Jefferson Avenue
Oxford, Mississippi 38655
Telephone: (662) 234-3351
Fax: (662) 234-0657

## WAIVER OF LIABILITY AND RELEASE

This **WAIVER OF LIABILITY AND RELEASE** is entered into on the date hereafter stated by Heather R. Seawright in favor of the Mississippi Highway Patrol, Lee County Prosecutor, Lee County Sheriff's Department, Lee County Jail:

1.      Heather R. Seawright waives any and all claims from her arrest by Mississippi Highway Patrol and detention pursuant her arrest in Lee County for DUI and assorted charges that occurred in Lee County on the night of April 28, 2012.

2.      Heather R. Seawright understands that all of the criminal charges resulting from the DUI arrest other than the failure to obey a police officer have been dismissed, and the fine for the failure to obey, which I have plead to, totals $252.75 to be paid within thirty (30) days form July 24, 2012.

3.      Heather R. Searwright certifies that she has fully read and discussed with her attorney, the desire to execute this waiver in an effort, to end further necessity of any criminal or civil action relating to these matters. Heather R. Seawright understands same and hereby voluntarily waives any liability of the Mississippi Highway Patrol, Lee County Sheriff's Office or employees thereof and affixes her signature below.

Agreed to this the __24__ day of __July__, 2012.

_Heather Seawright_
Heather R. Seawright



STATE OF MISSISSIPPI
COUNTY OF _Lee_

PERSONALLY came and appeared before me the undersigned authority in and for the aforesaid jurisdiction, the within named, Heather R. Seawright, who, after having been first duly sworn, acknowledged that she signed the above and foregoing Waiver of Liability and Release on the date therein mentioned as her own free act and deed.

_Heather Seawright_
Heather R. Seawright

WITNESS MY HAND AND OFFICIAL SEAL, this the 24 day of July , 2012.

_Misty Hartline_
NOTARY PUBLIC

Captain James Brown
Highway Patrol - Troop F
1103 Bratton Road
New Albany, MS 38652

Dear Captain Brown:

Please allow me to introduce myself before I share pertinent, experiential information with you. I am a 63 year-old widow and teacher at Tupelo High School, mother and grandmother. I have served as a teacher for 30 years and as a high school principal for eight. My late husband and I spent over 35 years working in home missions rehabilitating young adults with substance-abuse problems. Further, I currently tutor students at the Lee County Jail, as needed. My entire life has been dedicated to serving others, and I believe I fully understand the responsibility all of us have as members of the public within a civilized society.

Prior to May 18, 2012, I had never experienced an altercation with a public official who is charged to protect and serve the public; in fact, it has been over 40 years since I've even received a moving violation and that was due to the fact that I was trying to get to someone who desperately needed help.

On the night of May 18th, after having worked at THS's graduation ceremony at Bancorp South Arena, my fiance and I visited a fellow teacher's house for a late dinner. Afterwards, we drove from the country club area to my home in East Tupelo. On the way home, we encountered a MS Highway Patrol roadblock at McCullough Blvd. and Front Street, within the city limits of Tupelo.

My fiance was driving and Patrolman White asked him whether he had had anything to drink. My fiance replied, "Yes, two beers." Patrolman White then asked my fiance if he would test on the portable breathalizer. My fiance agreed and was told that he was "over the limit" but that in a while he could retest and probably pass. I got out of the vehicle and walked around to Patrolman White and asked whether I could drive us home since we were within less than 2 miles from my house. Patrolman White asked me if I'd had anything to drink, and I replied, "A glass of wine with my dinner." He asked me to take the breathalizer, which I did. I was not told the results of that test; however, Patrolman White came back to me 10-15 minutes later and asked me if I would take it again. This time he told me he "could not let me drive" (although he did not tell me the numerical value of the test) and that he would have to take me in but then I would be released. Throughout this entire time, Patrolman White was very considerate, respectful and courteous, in keeping with the MS highway Patrol's motto.

However, once Patrolman White turned me over to Patrolman Chris Hughes all courtesy quickly vanished. I could proceed to document for you the remainder of the night, which I recorded at 4:30 the following morning when I finally returned to my home. However, what I would say simply enters into a "he said, she said" recall which, I am certain, would be recalled completely differently by Patrolman Chris Hughes. My personal history stands on its own as should that of Patrolman Hughes.

If one were to view the videos of my "experience" at the Lee County Jail while under the dominance of Patrolman Hughes, one would clearly see that at NO time did I "fail to comply," "resist arrest," nor display "disorderly conduct." I did, however, question what Patrolman Hughes was doing and told him that, although I would do what he told me to, he knew that the way he was treating me was not right. I can only presume that I angered him by questioning his conduct because then he began to threaten and assault me.

One would think, Chris Hughes should not have felt threatened by me; however, I obviously caused him great concern for his own bodily safety, though I was already in the jail with a number of armed officers around me, since he then rescinded the offer of a phone call, pushed me against the wall, handcuffed me leaving multiple, documented bruises and lacerations on my arms and wrists, then put his face up to mine and said, "And I could just break your arm." Now, take into account, this is the report of an almost 64-year-old widow, dressed in a skirt and heels, who is causing such a serious threat to the bodily safety of an armed patrolman.

Please forgive me for treating some parts of this entire experience as absolutely ludicrous; it truly would be that if it were not so serious. Not only did Patrolman Hughes overstep the bounds of his authority given the lack of causation, but he has also created fear for me that he will somehow come after me at his own discretion when he discovers that I have reported his conduct. I am no longer comfortable even leaving my own home after dark for fear that, since he is in the position to gather all sorts of information about me, he will target me in my vehicle and perhaps even run me off the road or attack me in some other fashion – especially given his reported past history. However, I also realize you cannot correct his behavior if you are not aware of it, and I desire to participate in the responsibilities that enable our society to continue in the manner originally intended. Further, the entire Mississippi Highway Safety Patrol will be seen in the light of the actions of a single patrolman thereby negating your mission to "Enhance the public esteem for law enforcement by precept and example of each member of the department."

Being a member of a professional group, I realize that all professions must find ways of policing their own; doing so is not an easy responsibility, but nevertheless we owe that to the public we serve. Further, as a former high school principal, I also understand leadership's role in mentoring and developing the talents of those who serve under us. However, I know that if I had a teacher who was a repeated physical menace to students, and I did not remove that teacher from the interaction with students, I would be derelict in my responsibility. If that teacher were in line for retirement, I would, at the very least, be forced to remove him/her from the public arena and place him in a position where he could do no damage to that public whom I am also responsible for protecting and serving. If I failed to do so, returning said teacher to the classroom, and he assaulted yet another or multiple students, then, not only the teacher, but I and those above me would be negligent and culpable in the damage done to that student(s). Parents and society expect, as is their right, greater wisdom and a commitment to professional values and our code of conduct. In no way do I intend to advise you in your decision; in fact, I share the burden that such information I am reporting will cause.

I am respectfully submitting this letter to you in the hopes that you will be able to make an informed judgment concerning one of your patrolmen. At the least I will have done my part to advise you of an ongoing situation that could develop serious, if not fatal results.

Most respectfully yours,


Dr. M. E. Moore


cc: **Major Billy Mayes**
Chief Inspector

# IN THE JUSTICE COURT OF LEE COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI VS _John Heen_ 297 - 437, 467, 432, 469, 470, 471, 468, 617 4H

VIOLATION _Ziburn Clied. Resist Arst Tampance. HT_

May it please the court, comes now the prosecuting attorney in the above styled cause, and after considering the mitigating circumstances, hereby moves the court to:

( ) Reduce the charge to the lesser included misdemeanor charge
( ) Retire the case to the file
( ) Dismiss the case
( ) Nolie Prosque

_____
Prosecuting Attorney

_____
Defendant

_____
Defendant's Attorney

The above motion taken in open court this the __23__ day of __Oct__ is ( ) Sustained
( ) Denied
Nov 15

Ordered and adjudged this the __23__ day of __Oct__

_____
Judge

SPARKS PRINTING & GRAPHICS - Tupelo

JCI-23

