IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN A. HAWN, BRYAN LINDSEY,
HEATHER SEAWRIGHT, RONNIE HORTON,
and MATILDA MOORE                                        PLAINTIFFS

v.                                          CIVIL ACTION NO.: 1:13-cv-00036-GHD-DAS

CHRISTOPHER (C.G.) HUGHES and
MICHAEL BERTHAY, in their individual capacities          DEFENDANTS

MEMORANDUM OPINION DENYING
DEFENDANT MICHAEL BERTHAY'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court is a motion for summary judgment [85] filed by Defendant

Michael Berthay on the grounds of qualified immunity, failure to state a claim, and insufficient

evidence. Upon due consideration, the Court finds that the motion should be denied.

The Mississippi Department of Public Safety is an agency and arm of the State of

Mississippi. The Mississippi Highway Patrol is the unit of the Mississippi Department of Public

Safety charged with implementing the duties assigned to the Mississippi Department of Public

Safety, including enforcing all traffic laws, rules, and regulations of the State. MISS. CODE ANN.

§§ 45-1-2(2)(c); 45-3-21(1)(a). As such, the Mississippi Highway Patrol has law enforcement

jurisdiction over the majority of the State. The Mississippi Highway Patrol employs sworn

officers to carry out its mission who must undergo rigorous training to attain their title; these

sworn officers are commonly known as state troopers. The agency executive of the Mississippi

Highway Patrol is the director.

Plaintiffs John A. Hawn, Bryan Lindsey, Heather Seawright, Ronnie Horton, and Matilda

Moore ("Plaintiffs") bring this action under 42 U.S.C. § 1983 against Defendant Christopher

(C.G.) Hughes, a former sworn officer of the Mississippi Highway Patrol, Troop F in New

1

Albany, Mississippi ("Officer Hughes"), in his individual capacity. Plaintiffs allege that Officer Hughes violated their constitutional rights through the use of excessive force. Plaintiffs also bring a § 1983 supervisory-liability claim against Defendant Michael Berthay, former director of the Mississippi Highway Patrol ("Director Berthay"), in his individual capacity. Plaintiffs allege that Director Berthay was deliberately indifferent to Plaintiffs' constitutional rights in the training and supervision of Officer Hughes, particularly by refusing to terminate or otherwise discipline Officer Hughes despite Director Berthay's knowledge of Officer Hughes' acts of excessive force. Plaintiffs aver that Director Berthay's failure to terminate or otherwise discipline Officer Hughes proximately caused Plaintiffs to suffer constitutional violations by Officer Hughes.[1] Officer Hughes and Director Berthay have filed answers and affirmative defenses, and Director Berthay has filed the present motion for summary judgment which is ripe for review. The Court now turns to the factual background of the case.

## A. Factual Background

### a. Undisputed Facts

First, the Court considers the following undisputed facts: Director Berthay served as director of the Mississippi Highway Patrol from March 2006 through June 2010.[2] Officer Hughes was a sworn officer of the Mississippi Highway Patrol, Troop F, in New Albany, Mississippi.[3] A video exists depicting an incident between Officer Hughes and nonparty Carol

---

[1] Plaintiffs also initially brought this action against Defendant the Commissioner of Public Safety for the State of Mississippi, who was subsequently dismissed as a party to the action when the Court entered an Order [110] and memorandum opinion [111] granting his motion to dismiss Plaintiffs' claims [89] against him and his motion to dismiss [91] Defendant/Cross-Claimant Christopher (C.G.) Hughes' cross-claims against him pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, finding that the claims and cross-claims were both unripe for adjudication under Article III and barred by the Eleventh Amendment.

[2] Pls.' 2d Am. Compl. [53] ¶ 2; Berthay Aff. [85-1] ¶ 2; Berthay Dep. [100-1] at 5–6.

[3] Pls.' 2d Am. Compl. [53] ¶ 2; Berthay's Answer [69] ¶ 2.

Wampler-George in the Lee County Jail that occurred in 2007.[4] Lee County Sheriff Jim Johnson viewed the video and reported its existence to Jeff McNeece, then-Captain of Troop F of the Mississippi Highway Patrol.[5] Troop F acquired a copy of the video.[6] Captain McNeece and Major Ellis viewed the video.[7] At some point shortly after the incident, Director Berthay became aware of the existence of the video, that the incident was between Officer Hughes and an arrestee in the Lee County Jail, and that the use of force was involved.[8] In 2008, Director Berthay transferred Officer Hughes out of enforcement in Troop F, but the transfer was not related to Officer Hughes' alleged acts of force.[9] In June of 2010, Director Berthay left his post as director of the Mississippi Highway Patrol.[10] Director Berthay never reported any incident of force by Officer Hughes.[11]

b. Excessive Force Allegations—Officer Hughes

With the undisputed facts in mind, the Court now examines Plaintiffs' allegations of excessive force against Officer Hughes. Plaintiffs allege that Officer Hughes committed several acts of excessive force from October 2007 to July 2012, two such acts against nonparties to this

---

[4] Pls.' 2d Am. Compl. [53] ¶ 6; Berthay's Answer [69] ¶¶ 7, 11. *See* 10/14/2007 Videos of Lee Cnty. Jail Incident, Exs. E & F to Pls.' Resp. Opp'n to Berthay's MSJ [101].

[5] Pls.' 2d Am. Compl. [53] ¶ 7; Berthay's Answer [69] ¶ 7; Johnson Dep. [100-7] at 15.

[6] Pls.' 2d Am. Compl. [53] ¶ 7; Johnson Dep. [100-7] at 15; Ellis Dep. [100-10] at 11; *see* Berthay Dep. [100-1] at 10.

[7] Pls.' 2d Am. Compl. [53] ¶ 7; Berthay's Answer [69] ¶ 7.

[8] *See* Pls.' 2d Am. Compl. [53] ¶ 7; Berthay Dep. [100-1] at 8–9. *See also* Miss. Dep't of Pub. Safety— Miss. Highway Safety Patrol Narrative Statement of Charges Against Officer Hughes [100-11] at 3 (the 2007 incident in the Lee County Jail "was reported to supervisors at the time").

[9] Pls.' 2d Am. Compl. [53] ¶ 11; Berthay's Answer [69] ¶ 11.

[10] Pls.' 2d Am. Compl. [53] ¶¶ 2, 12; Berthay Aff. [85-1] ¶ 2; Berthay Dep. [100-1] at 5–6.

[11] Pls.' 2d Am. Compl. [53] ¶ 12; Berthay's Answer [69] ¶ 12. *See* Miss. Dep't of Pub. Safety—Miss. Highway Safety Patrol Narrative Statement of Charges Against Officer Hughes [100-11] at 3 (the 2007 incident in the Lee County Jail "was reported to supervisors at the time, but amazingly and mysteriously, no action was taken").

case and five other acts against Plaintiffs. Plaintiffs aver that despite Director Berthay's knowledge of the first two alleged acts of excessive force by Officer Hughes, Director Berthay failed to adequately train and supervise Officer Hughes, including terminating or otherwise disciplining him, and that Director Berthay's failures to do so proximately caused Plaintiffs to be victims of subsequent acts of excessive force by Officer Hughes which occurred after Director Berthay left office in June 2010.

### i. Excessive Force During Director Berthay's Tenure

Plaintiffs allege that in 2007 after arresting nonparty Carol Wampler-George and taking her to the Lee County Jail, Officer Hughes "used excessive force against [her] by throwing her to the concrete floor, striking her face against the floor, stomping her head against the floor, and kicking her."[12] This incident is captured on two videos which are in the summary judgment record.[13] Plaintiffs further allege that about two months later upon arriving at an arrest scene where several Mississippi Highway Patrol officers had apprehended nonparty William T. Brann, a driver who was intoxicated and possibly under the influence of drugs, Officer Hughes "used excessive force against Brann's head, causing him permanent brain damage."[14]

### ii. Excessive Force After Director Berthay's Tenure

Subsequently, Plaintiffs allege that they were each beaten severely by Officer Hughes. Plaintiffs allege that while Officer Hughes was arresting Plaintiff Bryan Lindsey, Officer Hughes "rammed [Plaintiff] Lindsey's head into a police vehicle[] and/or struck [him] in the face with a

---

[12] Pls.' 2d Am. Compl. ¶ 6.

[13] *See* 10/14/2007 Videos of Lee Cnty. Jail Incident, Exs. E & F to Pls.' Resp. Opp'n to Berthay's MSJ [101].

[14] Pls.' 2d Am. Compl. [53] ¶ 10.

flashlight, inflicting deep cuts on [his] head."[15]  Plaintiffs further allege that after stopping

Plaintiff Ronnie Horton, a fifty-five-year-old male, who had lost consciousness because of his

low blood pressure, Officer Hughes "beat him in the mouth, causing bleeding," inflicting

"serious pain in a disc in his neck, from which he still suffers."[16]  Plaintiffs aver that after

arresting Plaintiff Heather Seawright for driving under the influence and other charges and

bringing her into the Lee County Jail, Officer Hughes "str[uck] her in the face with his flashlight

and smash[ed] her head against a glass wall a[t] the jail."[17]  Plaintiffs further aver that Officer

Hughes stopped a car at a roadblock that contained passenger Plaintiff Matilda Moore, a sixty-

three-year-old female, and asked her if she had had anything to drink; Plaintiff Moore responded

that she had consumed one glass of wine; and Officer Hughes then "took Plaintiff Moore to the

Lee County Jail, where he threw her up against the wall, inflicted substantial bruises to her body,

and threatened to break her arm," inflicting "substantial" injuries to her.[18]  Finally, Plaintiffs

allege that after Plaintiff John Hawn drove around a roadblock and onto Highway 178, Officer

Hughes "immediately drove his [Mississippi] Highway Patrol vehicle into the front of [Plaintiff]

Hawn's vehicle in order to stop [Plaintiff] Hawn";[19] "[Plaintiff] Hawn's vehicle bumped slightly

into the rear of [Officer] Hughes' patrol vehicle";[20] "[Officer] Hughes exited his vehicle and

savagely beat [Plaintiff] Hawn with a flashlight, knocking him unconscious and fracturing bones

---

[15] *Id.* ¶ 14.

[16] *Id.* ¶ 16.

[17] *Id.* ¶ 18.

[18] *Id.* ¶ 20.

[19] *Id.* ¶ 21.

[20] *Id.*

in his face";[21] "Officer Hughes then "directed [his subordinate Officer Jody Berryhill] to destroy the videotape in [Officer] Hughes' patrol vehicle, which probably recorded the beating";[22] "[Officer] Hughes smashed the front lights of [Plaintiff] Hawn's vehicle in order to make it appear that [Plaintiff] Hawn had crashed his vehicle violently into the rear of the patrol vehicle";[23] Officer Hughes transported Plaintiff Hawn to the Lee County Jail, "where an unknown person alerted medical authorities at North Mississippi Medical Center ('NMMC') of Plaintiff Hawn's condition";[24] and "Plaintiff Hawn was transported to NMMC, where he was diagnosed with a fractured jaw and other substantial injuries."[25]

### c. Supervisory Liability—Director Berthay

Finally, the Court examines Plaintiffs' supervisory-liability allegations against Director Berthay. Plaintiffs allege that Director Berthay "made all decisions as to the discipline of all officers, including not only terminations, but also minor actions, such as reporting an officer for counseling or ordering Internal Affairs investigations."[26] Plaintiffs further allege that despite knowledge of Officer Hughes' 2007 beating of Wampler-George and likely knowledge of the subsequent 2007 beating of Brann, Director Berthay never reported either incident to anyone. Plaintiffs aver that after Director Berthay left his employment at the Mississippi Highway Patrol in June of 2010, Officer Hughes "requested and was given a transfer back to the enforcement

---

[21] *Id.*

[22] *Id.* ¶ 22.

[23] *Id.*

[24] *Id.* ¶ 23.

[25] *Id.*

[26] *Id.* ¶ 7.

division of" Troop F,[27] where Officer Hughes continued his acts of excessive force, this time against Plaintiffs Bryan Lindsey, Ronnie Horton, Heather Seawright, Matilda Moore, and John Hawn. Plaintiffs maintain that after the beating of Plaintiff Hawn in July 2012, Mississippi Highway Patrol Officer Jerome Collins observed the condition of Plaintiff Hawn's face and notified Mississippi Highway Patrol Lieutenant James Brown, who "searched Troop F's files" and for the first time "discovered the 2007 videotaped assault" on the arrestee in the Lee County Jail.[28] Plaintiffs allege that Lieutenant Brown notified then-Mississippi Highway Patrol Director Donnell Berry of the existence of the video.[29] Plaintiffs further allege that shortly thereafter Officer Hughes threatened his girlfriend, who notified Mississippi Highway Patrol headquarters of her knowledge of Officer Hughes' "repeated abuses of citizens and abuse of steroids," and that the Mississippi Department of Public Safety "then directed an Internal Affairs' investigation of [Officer] Hughes which resulted in" criminal charges against Officer Hughes; an intensive criminal investigation by the FBI, "with the crucial evidence being" the 2007 video of the Lee County Jail incident; a criminal information; and Officer Hughes' guilty plea to excessive force against Wampler-George and subsequent conviction and sentence in federal court.[30]

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v.*

---

[27] *Id.* ¶ 13.

[28] *Id.* ¶ 25; Brown Dep. [100-3] at 16.

[29] Pls.' 2d Am. Compl. [53] ¶ 25.

[30] *Id.* ¶¶ 26–27.

*CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

It is axiomatic that in ruling on a motion for summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, —— U.S. ——, ——, 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Therefore, "[w]hen a defendant raises qualified immunity on summary judgment, the court must 'adop[t] . . . the plaintiff[s'] version of the facts' unless 'no reasonable jury could believe it.' " *Air Wis. Airlines Corp. v. Hoeper*, —— U.S. ——, ——, 134 S. Ct. 852, 868, 187 L. Ed. 2d 744 (2014) (quoting *Scott v. Harris*, 550 U.S. 372, 378–80, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' "

8

*Tolan*, 134 S. Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505). With the foregoing standard in mind, the Court turns to the summary judgment motion.

### C. Analysis and Discussion

In his motion for summary judgment, Director Berthay argues that the § 1983 supervisory-liability claim against him should be dismissed because Plaintiffs have failed to state a claim and present sufficient evidence to sustain the claim past summary judgment and because Director Berthay is qualifiedly immune from suit. The Court examines first the merits and then the qualified-immunity issue.

#### a. Merits of § 1983 Supervisory-Liability Claim

Director Berthay argues that Plaintiffs have failed to state a viable supervisory-liability claim against him and further rely on unsupported and unsupportable conjecture and hypotheses. For the reasons stated below, the Court finds these arguments are not well taken.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, —— U.S. ——, —— –, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012) (quoting § 1983). "Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *See id.*, 132 S. Ct. at 1661; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). "When the complaint invokes § 1983, the plaintiff must allege with particularity all material facts on which [she] contends [she] will establish [her] right to recovery,. . . ." *Walker v. Henderson*, 239 F.3d 366, 2000 WL 1741736, at *1 (5th Cir. 2000) (Table) (quoting *Morrison v. City of Baton Rouge, La.*, 761 F.2d 242, 244–45 (5th Cir. 1985) (quotation marks and citation omitted)).

"A supervisor not personally involved in the acts that allegedly deprived the plaintiff of his constitutional rights is liable under § 1983 only if (1) the supervisor failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of [the plaintiff's] rights; and (3) the failure to train or supervise constituted deliberate indifference to [the plaintiff's] constitutional rights." *Estate of Pollard v. Hood County, Tex.*, --- F. App'x ----, 2014 WL 4180809, at *5 (5th Cir. Aug. 25, 2014) (per curiam) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a[n] . . . actor disregarded a known or obvious consequence of his action." *Estate of Davis*, 406 F.3d at 381 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (internal quotation marks omitted)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Id.* (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, — U.S. ——, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 409, 117 S. Ct. 1382).

Although a plaintiff who seeks to mount a case for supervisory liability against an individual under § 1983 is in for an uphill battle, the battle is not insurmountable; if it were, no individual could ever be brought into court on a § 1983 supervisory-liability claim, thus rendering the cause of action a nullity. For the reasons stated below, the Court finds that Plaintiffs' § 1983 supervisory-liability claim survives summary judgment.

i. <u>Plaintiffs have shown that Director Berthay was Officer Hughes'
supervisor.</u>

Director Berthay argues that he was not Officer Hughes' supervisor, because he was not

the sole individual responsible for disciplining sworn officers of the Mississippi Highway Patrol

and could not have controlled certain variables in the decision of whether to terminate or

otherwise discipline Officer Hughes for these alleged acts. In making all reasonable inferences

in favor of Plaintiffs, as this Court must do on summary judgment, the Court finds that Plaintiffs

have adequately shown that Director Berthay, as the agency executive of the Mississippi

Highway Patrol, was Officer Hughes' supervisor for purposes of § 1983 supervisory liability.

The summary-judgment record fully supports that Director Berthay was the final word in the

Mississippi Highway Patrol on all disciplinary matters, including termination of a sworn

officer;[31] that Director Berthay was the agency official designated to impose penalties for a

sworn officer's act of physical violence;[32] and that Director Berthay handled disciplinary matters

that were not resolved at a lower level "that reached [his] desk as a result."[33]

---

[31] *See id.* ¶ 7 (alleging that Director Berthay "made all decisions as to the discipline of all officers,
including not only terminations, but also minor actions, such as reporting an officer for counseling or ordering
Internal Affairs investigations"); Berthay's Mem. Br. Supp. MSJ [86] at 2 ("As director, Berthay was the final
decision making authority within the [Mississippi Highway] Patrol regarding matters of discipline and discharge.").
*See also* Berthay 2d Aff. [106-2]; [107] ¶¶ 3–4 (when another officer was charged with "striking an arrestee with the
back [of] his hand," those charges were investigated, and after a review board concluded that the charges against the
trooper were founded, Director Berthay "signed a special order terminating the employment of that trooper on
September 11, 2008").

[32] *See* Miss. Dep't of Pub. Safety—General Order 23/01 [85-2] at 1 ("This general order establishes
offenses and discipline concerning employees of [Mississippi Department of Public Safety] charged with a breach of
discipline or unsatisfactory performance of duty[,] and/or violations of law."), 4 (Group Three offenses include acts
of physical violence), 7 ("Penalties for Group Three Offenses shall be imposed by order of the Director of the Office
of the Mississippi Highway Safety Patrol . . . .").

[33] *See* Berthay Aff. [85-1] ¶ 3 ("As Director, I participated in making decisions only on disciplinary
matters that were not resolved at a lower level and that reached my desk as a result."); Berthay's Mem. Br. Supp.
MSJ [86] at 2 ("Berthay only made decisions when matters of discipline were not resolved at a level below the level
of director.").

Director Berthay maintains that during his tenure there were "five levels of management" and that he "require[d] a supervisor to handle all use of force policies, to follow-up on use of force policies, write a report regarding use of force policy, implementing use of force policy, purchase tasers"; and that the supervisors "were supposed to be handling [force policies] and anything that came out of it."[34] However, Plaintiffs have submitted numerous exhibits refuting Director Berthay's arms-length account of his managerial style, including deposition testimonies of then-Assistant Director Donnell Berry, Captain Jeff McNeece, Major Bill Ellis, and Lieutenant James Brown, all of which support Plaintiffs' allegation that Director Berthay had the power to discipline and to terminate Officer Hughes and that Director Berthay demanded to handle such disciplinary matters himself.[35] Lieutenant Brown testifies that "[Director] Berthay was running everything" and "was in control of everything."[36] Then-Assistant Director Berry testifies that decisions to terminate or suspend or otherwise discipline troopers are "done by the [director of the Mississippi Highway Patrol]."[37] Captain McNeece testifies that all of the disciplinary actions in the patrol practice at that time had to be imposed by Director Berthay, as director.[38] Captain McNeece further testifies that the 2007 incident in the Lee County Jail surpassed the use-of-force complaints that Captain McNeece would handle; that a problem of that "magnitude with a[ ] trooper" was "something that the [director] ha[d] to take care of"; that Captain McNeece had expected Director Berthay to take action concerning the incident; and that

---

[34] Berthay Aff. [85-1] ¶¶ 3–4.

[35] Pls.' Mem. Br. Supp. Resp. Opp'n to Berthay's MSJ [102] at 6.

[36] Brown Dep. [100-3] at 25.

[37] Berry Dep. [100-2] at 6.

[38] McNeece Dep. [100-4] at 19–20.

if Captain McNeece had tried to handle it, he might have been fired for "jump[ing] command."[39] Major Ellis testifies that after he viewed the video of the 2007 incident between Officer Hughes and Wampler-George, he reported it to Director Berthay in accordance with "[Director Berthay's] instructions from past for [Major Ellis] to call [Director Berthay] on incidents first," and second to Donnell Berry, the assistant director.[40] Then-Assistant Director Berry testifies that "basically during [Director Berthay's] whole tenure" Director Berthay would not discuss issues with Berry and had instructed some of the troopers to come directly to Director Berthay with issues and not go through Berry.[41] Similarly, Lieutenant Brown testifies that "[w]hen [Berry] was sitting . . . second to [Director] Berthay, a lot of things . . . went around [Berry] and went straight to [Director] Berthay because that's the way [Director] Berthay wanted it."[42] The Court finds that Plaintiffs have shown that Director Berthay was Officer Hughes' supervisor.

### ii. Plaintiffs have shown that Director Berthay failed to train or supervise Officer Hughes.

The Court further finds that Plaintiffs have shown on summary judgment that Director Berthay failed to train or supervise Officer Hughes. It is undisputed that despite knowledge of the 2007 incident in the Lee County Jail between Officer Hughes and Wampler-George, Director Berthay never disclosed the incident to his superiors. Although a dispute of fact exists as to whether Director Berthay ever actually watched the video of Officer Hughes' use of force against Wampler-George,[43] the summary judgment record is clear that in 2007 Director Berthay

---

[39] *Id.* at 19–20, 24, 31, 32.

[40] Ellis Dep. [100-10] at 16.

[41] Berry Dep. [100-2] at 17.

[42] Brown Dep. [100-3] at 55.

[43] *See id.* ¶ 7 (alleging that after Major Ellis and Captain McNeece viewed the video, "[Major] Ellis immediately notified [Director] Berthay, who traveled to Troop F headquarters in New Albany, Mississippi, and

was aware that the incident had occurred. Director Berthay testifies that shortly after the incident Lee County Sheriff Jim Johnson informed him that an incident had occurred in the Lee County Jail "involving [Officer] Hughes and . . . an arrestee . . . and the use of force,"[44] and that Director Berthay told Sheriff Johnson that Sheriff Johnson "need[ed] to get the [video] to somebody with the district or get ahold of them . . . and turn it over to the patrol and you also need to notify the FBI" and that if a civil rights violation occurred in the Lee County Jail it was Sheriff Johnson's responsibility to handle.[45] Director Berthay further testifies that he "advis[ed] [Major] Ellis that they needed to look into it and if there was a video they needed to send somebody over to pick it up."[46] Major Ellis testifies that he reported the incident to Director Berthay, said he was concerned about what was on the video, and that "[Director] Berthay needed to get somebody up there to look at it."[47] Making all reasonable inferences in favor of Plaintiffs, Director Berthay was aware the incident between Officer Hughes and Wampler-George involved a serious act of force by a sworn officer of the Mississippi Highway Patrol. It is undisputed that despite knowledge of the incident, Director Berthay never made a notation in Officer Hughes' employment file, never ordered an internal affairs investigation, never took any action to terminate or otherwise discipline Officer Hughes, and never reported the incident up to the

---

viewed the videotape which gave him personal knowledge of [Officer] Hughes' use of excessive force against Wampler-George"); Berthay's Answer [69] ¶ 11 ("It is expressly denied that [Director] Berthay ever viewed the videotape"); Berthay Dep. [100-1] at 10 (testifying that he never asked to see the video); McNeece Dep. [100-4] at 18 ("[Director] Berthay viewed the tape in my office in the presence of me and Major Ellis"); Ellis Dep. [100-10] at 12 (testifying that Director Berthay viewed the video with Major Ellis and Captain McNeece at the New Albany substation).

[44] *See* Berthay Dep. [100-1] at 8–9 (testifying that Lee County Sheriff Jim Johnson had informed him at some point during a meeting that "there was an incident involving [Officer] Hughes and somebody in the [Lee County J]ail, of use of force. . . . [Lee County Sheriff Jim Johnson] advised that there was a use of force, but he said he had it on video."); *see id.* at 11 (stating that he was aware there was some use of force).

[45] Berthay Dep. [100-1] at 9.

[46] *Id.*

[47] Ellis Dep. [100-10] at 11–12, 16.

Mississippi Department of Public Safety. Particularly striking are Director Berthay's statements in his second affidavit that while he was in office, he did discipline another sworn officer of the Mississippi Highway Patrol who was "charged with excessive force for striking an arrestee with the back [of] his hand"; the investigation of that officer resulted in Director Berthay "sign[ing] a special order terminating the employment of that trooper . . . ."[48] If anything, these statements further strengthen Plaintiffs' position on summary judgment that Director Berthay failed to discipline Officer Hughes despite knowledge of his acts of force in 2007 against Wampler-George in the Lee County Jail. In a narrative statement of charges filed against Officer Hughes by Major Billy Mayes, commander of the Northern Traffic Enforcement Region of the Mississippi Highway Patrol, Major Mayes states:

> During the course of the investigation [into Officer Hughes], it . . . came to the attention of Department Management and Investigators that [Officer] Hughes had used grossly excessive force against a lady in custody in the Lee County [J]ail in 2007. This incident was reported to supervisors at the time, but amazingly and mysteriously, no action was taken. . . . The Department would be negligent for discovering this incident and not taking appropriate administrative action. There is absolutely no justification for this behavior, in this context, by a sworn officer.[49]

In addition, Plaintiffs have alleged that shortly after Officer Hughes' alleged beating of Brann that resulted in permanent brain damage, Director Berthay transferred Officer Hughes out of enforcement in Troop F, but did not note Officer Hughes' use of force as a reason for the transfer. The Court finds that Plaintiffs have raised a dispute of fact that Director Berthay was aware of the alleged Brann beating, as well. For all of the foregoing reasons, Court finds that

---

[48] Berthay 2d Aff. [106-2]; [107] ¶¶ 3–4.

[49] Miss. Dep't of Pub. Safety—Miss. Highway Safety Patrol Narrative Statement of Charges Against Officer Hughes [100-11] at 3.

Plaintiffs have adequately shown for purposes of summary judgment that Director Berthay failed to adequately train or supervise Officer Hughes.

### iii. Plaintiffs have demonstrated causation and deliberate indifference.

The Court further finds that Plaintiffs have demonstrated a causal connection between Director Berthay's alleged failure to supervise or train Officer Hughes and the alleged violations of Plaintiffs' constitutional rights, as well as that the alleged failure to train or supervise constituted deliberate indifference to the constitutional rights of Plaintiffs. Plaintiffs aver that "[i]n willful indifference to the rights of citizens to public safety, [Director Berthay] failed to take any action against [Officer] Hughes or to take any step to protect citizens from the danger [Officer] Hughes presented."[50] Plaintiffs allege that Director Berthay "is jointly liable to Plaintiffs for the injuries inflicted by [Officer] Hughes because [Director Berthay] was deliberately indifferent to irrefutable evidence that [Officer] Hughes had engaged in an act of excessive force and had a propensity for violence."[51] Plaintiffs aver that "[Director] Berthay's failure to note [Officer] Hughes' record of violence in Mississippi Highway Patrol records left [Officer] Hughes able to return to the enforcement division [of Troop F], and to repeatedly use excessive force upon citizens, including Plaintiffs."[52] Director Berthay maintains that Plaintiffs fail to demonstrate causation because Director Berthay left his post before any of the Plaintiffs encountered Officer Hughes and because a jury would have to speculate as to different possible outcomes if Director Berthay had initiated an investigation of the Lee County Jail incident.[53] However, the Court finds that Plaintiffs have raised disputes of fact that Director Berthay

---

[50] Pls.' 2d Am. Compl. [53] ¶ 7.

[51] *See id.* ¶ 2.

[52] *Id.*

[53] Berthay's Mem. Br. Supp. MSJ [86] at 11.

"disregarded a known or obvious consequence of his action," *see Estate of Davis*, 406 F.3d at 381; here, the "known or obvious consequence" was that Officer Hughes would continue "a pattern of similar [alleged] constitutional violations" against other individuals following the 2007 Lee County Jail incident, *see Connick*, 131 S. Ct. at 1360. If Director Berthay knowingly disregarded this obvious consequence, then it follows that the "obvious consequence" of continued acts of excessive force would occur. The Court is of the opinion that Plaintiffs have demonstrated for purposes of summary judgment that Director Berthay was aware of alleged acts of excessive force by Officer Hughes in 2007 involving Wampler-George and Brann and acted with deliberate indifference to the same, and that this alleged deliberate indifference proximately caused Officer Hughes' pattern of excessive force to continue with Plaintiffs. Accordingly, Plaintiffs' supervisory-liability claim against Director Berthay survives summary judgment on its merits. The Court now turns to whether Director Berthay is nonetheless qualifiedly immune from suit on the claim.

### b. Qualified Immunity

State actors enjoy various protections from liability derived from the common law, such as absolute or qualified immunity. *See Filarsky*, 132 S. Ct. at 1660, 1662 (it is well settled that "common law protections well grounded in history and reason had not been abrogated by covert inclusion in the general language of § 1983") (internal quotation marks and citations omitted). "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, —— U.S. ——, ——, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (May 27, 2014) (citing *Ashcroft v. al–Kidd*, 563 U.S. ——, ——, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (quotation marks omitted)); *Truvia v. Connick*, --- F. App'x ---,

2014 WL 3888231, at *6 (5th Cir. Aug. 8, 2014) (per curiam) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Atteberry*, 430 F.3d at 253 (citation omitted).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]' " *Tolan*, 134 S. Ct. at 1865 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Courts have discretion to decide which prong to consider first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.*

Director Berthay argues that Plaintiffs have failed to demonstrate either a violation of a constitutional right or that any such constitutional violation was clearly established at the time of the alleged misconduct. The Court addresses each argument in turn.

First, Director Berthay maintains that Plaintiffs have failed to demonstrate a violation of a constitutional right. Specifically, Director Berthay maintains that "[P]laintiffs' claim is, apparently, that they had the constitutional right to have Berthay view the videotapes of the incident in the [Lee County J]ail[] and that they had the constitutional right to have Berthay unilaterally discharge Hughes."[54] The Court finds that this argument is not well taken and is

---

[54] *Id.*

apparently a misstatement of the supervisory-liability claim against Director Berthay. The claim is that Director Berthay failed to train or supervise Officer Hughes in deliberate indifference to the rights of Plaintiffs and other Mississippi citizens to be free from excessive force. The foundation of a § 1983 supervisory-liability deliberate-indifference claim is often a "pattern of similar constitutional violations by untrained employees." *See Connick*, 131 S. Ct. at 1360. In this case, the alleged constitutional violations are Officer Hughes' repeated acts of excessive force. "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan*, 131 S. Ct. at 1865 (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). Plaintiffs' second amended complaint states a claim that Officer Hughes committed Fourth Amendment violations both during and after Director Berthay's tenure, as summarized above in the "Factual Background" section of this opinion. Plaintiffs have further demonstrated that Director Berthay acted with deliberate indifference to the constitutional rights of Plaintiffs. The Court finds that Plaintiffs have satisfied their burden of showing a constitutional violation. The Court now turns to examine whether Plaintiffs have similarly met their burden on the clearly-established prong.

Director Berthay further argues that Plaintiffs have failed to show that the right in question was clearly established. "A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hernandez v. United States*, —— F.3d ——, 2014 WL 2932598, at *5 (5th Cir. 2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 134 S. Ct. at 2023 (citing *al-Kidd*, 131 S. Ct. at 2083–2084). " 'We do

not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Stanton v. Sims*, —— U.S. ——, ——, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013) (per curiam) (quoting *al–Kidd*, 131 S. Ct. at 2083)). " '[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' " *Tolan*, 134 S. Ct. at 1866 (quoting *Hope*, 536 U.S. at 741, 122 S. Ct. 2508). In cases alleging unreasonable searches or seizures, the United States Supreme Court "ha[s] instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.' " *Id.* (quoting *Saucier*, 553 U.S. at 201, 121 S. Ct. 2151). "Accordingly, courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Id.* In this case, Plaintiffs maintain that the right to be free from excessive force was well established and sufficiently definite for any reasonable official to understand that unjustified force against arrestees by a sworn officer of the Mississippi Highway Patrol was excessive force in violation of the Fourth Amendment and that failing to adequately train or supervise Officer Hughes, including terminating or otherwise disciplining Officer Hughes for these alleged acts, would be deliberate indifference to the constitutional rights of individuals. In the opinion of this Court, Plaintiffs have met their burden in showing that a reasonable official in Director Berthay's shoes would have understood that his failure to train or supervise Officer Hughes, despite knowledge of the 2007 Lee County Jail incident involving Wampler-George and likely knowing of the subsequent incident involving Brann, would constitute deliberate indifference. For all of the foregoing reasons, Plaintiffs have overcome Director Berthay's qualified-immunity defense at the summary-judgment stage.

### D. Conclusion

Accordingly, because genuine disputes of material fact exist which preclude summary judgment on Plaintiffs' § 1983 supervisory-liability claim against Defendant Michael Berthay, and because Plaintiffs have demonstrated the inapplicability of the qualified-immunity defense at the summary-judgment stage, Defendant Michael Berthay's motion for summary judgment [85] is DENIED.

An order in accordance with this opinion shall issue this day.

THIS, the 8th day of September, 2014.

_____
SENIOR JUDGE