**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**JOHN A. HAWN, BRYAN LINDSEY,
HEATHER SEAWRIGHT, RONNIE HORTON
and MATILDA MOORE**                                       **PLAINTIFFS**

**V.**                             **CIVIL ACTION NO. 1:13-cv-36-GHD-DAS**

**CHRISTOPHER (C.G.) HUGHES, and
MICHAEL BERTHAY, in their individual capacities,
and the COMMISSIONER OF PUBLIC SAFETY
FOR THE STATE OF MISSISSIPPI, for declaratory
relief**                                                      **DEFENDANTS**

___

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO DEFENDANT CHRISTOPHER HUGHES**
___

      **COME NOW,** Plaintiffs John A. Hawn, Bryan Lindsey, Heather Seawright, Ronnie Horton, and Matilda Moore and submit their Memorandum Brief in Support of Plaintiffs' Motion for Partial Summary Judgment as to Defendant Christopher Hughes:

### I. INTRODUCTION

      There is no genuine issue of material fact as to Defendant Christopher Hughes' liability in this case. Each Plaintiff has provided overwhelming evidence establishing Hughes' violation of their clearly-established Constitutional rights. There is no evidence disputing Hughes' liability. Hughes invoked the Fifth Amendment as to the claims of each Plaintiff during his deposition in this case.

      Because of Plaintiffs' indisputable evidence regarding Hughes' liability, and the adverse inference which arises from Hughes' invoking his privilege against self-incrimination, Hughes is liable to each Plaintiff as a matter of law.

Thus, Plaintiffs request the Court to grant summary judgment as to Hughes' liability. The issue of each Plaintiffs' damages should be tried to a jury.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

A. Defendant Christopher Hughes' Background.

Christopher Hughes was an officer with the Mississippi Highway Patrol from March 15, 1996, until September 25, 2012. (Depo. of Chris Hughes at 9, attached to Pl.'s Mot. As Exhibit "A"). It is undisputed that on October 14, 2007, Hughes savagely beat a female suspect at the Lee County Jail. (*See, e.g.*, Depo. of Jeff McNeece at 23-24, attached to Pl.'s Mot. as Exhibit "B"). A surveillance system in the jail recorded the beating from two (2) different angles. (*See* videos of incident of October 14, 2007, attached to Doc. No. 100 as Exhibits "E" and "F"). The videos depict Hughes punching the suspect in her face, throwing her to the floor and then kicking her with his boot.[1] (*Id.*).

About two months after the Lee County Jail beating, Hughes assaulted another citizen by beating him with a flashlight on December 30, 2007. (*See* Use of Force Report attached to Pl.'s Mot. as Exhibit "C"). The beaten suspect filed a civil rights action against Hughes. (*See* Complaint in *Brann v. Hughes*, United States District Court for the Northern District of Mississippi No. 1:08CV154-GHD, attached to Pl.'s Mot. as Exhibit "D"). The case was later settled. (*See* Order Dismissing Action By Reason of Settlement in *Brann v. Hughes*, attached to Pl.'s Mot. as Exhibit "E").

Much later, Hughes pled guilty to a felony for assaulting the female at the Lee County Jail on October 14, 2007. (*See, e.g.*, Plea Agreement in *United States v. Hughes*, attached to Pl.'s Mot. as Exhibit "F"). As part of the plea agreement, the Government agreed not to charge

---

[1] In the interest of brevity, and judicial economy, Plaintiffs do not re-file the subject video recordings, but reference the video recordings which were previously filed conventionally in this case.

2

Hughes with other offenses which are the subject of this action. (*See* Plea Agreement, ¶ 2). Hughes is currently incarcerated by the Bureau of Prisons. (*See* Sentencing Order, attached to Pl.'s Mot. as Exhibit "G"; inmate locator *available at* http://www.bop.gov/inmateloc/).

During his deposition in this case, Hughes was asked whether he used excessive force towards each of the Plaintiffs in this case. (Hughes Depo. at 78). Hughes invoked his Fifth Amendment privilege against self-incrimination and refused to answer. (Hughes Depo. at 62-63, 77-78).

The undisputed record-evidence as to Hughes' actions against each Plaintiff is discussed in-turn below.

B. Use of Force on Brian Lindsey.

On October 17, 2010, Brian Lindsey arrived at a safety checkpoint manned by Defendant Hughes and other officers. (Declaration of Brian Lindsey at ¶ 1, attached to Pl.'s Mot. as Exhibit "H"). Lindsey was told he was under arrest, and his hands were hand-cuffed behind his back. (*Id.* at ¶ 3). Lindsey asked why he was being arrested and taken to jail. (*Id.*). Hughes told Lindsey not to ask why he was being arrested or he would "do something" to Lindsey. (*Id.*). Lindsey again asked why he was being arrested. (*Id.* at ¶ 3). Defendant Hughes then beat Lindsey. (*Id.* at ¶ 4). Hughes rammed Lindsey's head into a patrol car and threw Lindsey down onto the highway. (*Id.*). Hughes severely beat Lindsey while Lindsey's hands were handcuffed behind his back. (*Id.*).

The forced used against Lindsey by Defendant Christopher Hughes was completely unwarranted. (*Id.* at ¶ 5). Lindsey was not behaving in a disorderly or violent manner. (*Id.*). Lindsey obeyed the commands of law enforcement officers. (*Id.*). Lindsey did not pose a threat to the safety of any person. (*Id.*). Lindsey was not resisting arrest or attempting to flee. (*Id.*).

There was no legitimate justification for Defendant Christopher Hughes' use of force against Lindsey. (*Id.* at ¶ 6). Christopher Hughes' attack against Lindsey was unprovoked and unjustified. (*Id.*).

Lindsey was physically injured as a result of Christopher Hughes' excessive force. (*Id.* at ¶ 7) Lindsey sustained a front basilar skull fracture as a result of the beating. (*Id.*). Lindsey subsequently suffered headaches, blurred vision, memory loss, lacerations and a permanent scar as a result of the excessive force used against him by Christopher Hughes. (*Id.*). (*See also* Photographs of Lindsey, attached to Pl.'s Mot. as Exhibit "I" and Exhibit "J").

The Highway Patrol investigated Lindsey's beating. (*See* Memorandum dated October 26, 2010, attached to Pl.'s Mot. as Exhibit "K"). Hughes' lieutenant characterized Hughes' force against Lindsey as "extreme and unnecessary." (*Id.*).

C. Use of Force on Ronnie Horton.

On August 4, 2011, Ronnie Horton lost consciousness due to a medical condition while driving in Lee County, Mississippi. (Declaration of Ronnie Horton at ¶ 2, attached to Pl.'s Mot. as Exhibit "L"). Defendant Hughes came to the scene. (*Id.*).

Defendant Hughes struck Horton in the mouth, causing bleeding. (*Id.* at ¶ 3). When Horton asked Hughes why he hit him, Hughes responded "Did you want some more?" (*Id.*).

The forced used against Horton by Defendant Christopher Hughes was completely unwarranted. (*Id.* at ¶ 4). Horton was not behaving in a disorderly or violent manner. (*Id.*). Horton obeyed the commands of law enforcement officers. (*Id.*). Horton did not pose a threat to the safety of any person. (*Id.*). Horton was not resisting arrest or attempting to flee. (*Id.*). There was no legitimate justification for Hughes' use of force against Horton. (*Id.* at ¶ 5). Christopher Hughes' attack against Horton was unprovoked and unjustified. (*Id.*).

4

Horton was physically injured as a result of Hughes' use of force. (*Id.* at ¶ 6). Horton suffered from neck pain / cervical radiculopathy as a result of Hughes' beating him. (*Id.*). Horton received medical treatment for his injuries at the North Mississippi Medical Center and at North Mississippi Neurosurgical Services. (*Id.*). Horton also underwent and physical therapy. (*Id.*).

D. Use of Force on Heather Seawright.

On April 28, 2012, Christopher Hughes pulled over a vehicle driven by Heather Seawright. (Declaration of Heather Seawright at ¶ 2, attached to Pl.'s Mot. as Exhibit "M"). Hughes arrested Seawright and transported her to the Lee County Adult Detention Center in Tupelo, Mississippi. (*Id.*).

While in the jail, Seawright questioned why she had been arrested. (*Id.* at ¶ 3). Seawright also asked the officers to loosen her handcuffs. (*Id.*).

Upon Seawright's making these inquiries, Hughes struck her in the face with a flashlight. (*Id.* at ¶ 4). Hughes also smashed Seawright's head against a wall in the jail. (*Id.*).

The forced used against Seawright by Hughes was completely unwarranted. (*Id.* at ¶ 5). Seawright was not behaving in a disorderly or violent manner. (*Id.*). Seawright obeyed the commands of law enforcement officers. (*Id.*). Seawright did not pose a threat to the safety of any person. (*Id.*). Seawright was not resisting arrest or attempting to flee. (*Id.*). There was no legitimate justification for Hughes' use of force against Seawright. (*Id.* at ¶ 6). Hughes' attack against Seawright was unprovoked and unjustified. (*Id.*).

Seawright was physically injured as a result of Hughes' use of force. (*Id.* at ¶ 7). Seawright received medical treatment for her injuries at the North Mississippi Medical Center. (*Id.*). (*See also* Photograph of Seawright, attached to Pl.'s Mot. as Exhibit "N").

5

E. Use of Force on Matilda Moore.

Matilda Moore was a passenger in a vehicle stopped at a road block. (Declaration of Matilda Moore at ¶ 1, attached to Pl.'s Mot. as Exhibit "O"). Moore's companion was arrested ostensibly on suspicion of driving under the influence of alcohol. (*Id.* at ¶ 3). Moore was taken to the Lee County Sheriff's Department and informed that she would be released from there. (*Id.* at ¶ 5). However, when Moore arrived at the Sheriff's Department, she was turned over to Hughes. (*Id.* at ¶ 6).

When Moore told Hughes that she had done nothing wrong, and another Highway Patrolman stated she would be released, Hughes accused Moore of "having an attitude." (*Id.* at ¶ 9). Moore did nothing wrong and did not resist Hughes. (*Id.* at ¶ 10). Hughes forcefully grabbed Moore's left arm and violently pulled it behind her back, pushing her against the wall with the weight of his body. (*Id.* at ¶ 11). Hughes' did so in a manner calculated to cause Moore pain and injury. (*Id.*). Hughes told Moore that he "could just break her arm." (*Id.* at ¶ 13).

Hughes handed Moore off to another officer to be stripped searched, for no reason. (*Id.* at ¶ 15). Moore was detained for several hours and then released. (*Id.* at ¶ 17). Hughes made out several frivolous and baseless misdemeanor charges against Moore. (*Id.* at ¶ 17).

Moore was injured as a result of Hughes' excessive force against her. (*Id.* at ¶ 18). Moore sought medical treatment and was prescribed medication and physical therapy to treat her injuries. (*Id.*). Moore continues to suffer pain in her shoulder, arm and wrists as a result of Hughes' excessive force. (*Id.*). (S*ee also* Photograph of Moore, attached to Pl.'s Mot. as Exhibit "P").

6

F. Use of Force on John Hawn.

On July 16, 2012, John Hawn arrived at a safety checkpoint manned by Defendant Hughes. (Declaration of John Hawn at ¶ 2, attached to Pl.'s Mot. as Exhibit "Q"). Hawn was unable to stop his vehicle and drove around the checkpoint. (*Id.*).

Once Hawn got the vehicle stopped, Defendant Christopher Hughes exited his vehicle in a state of rage. (*Id.* at ¶ 3). Hawn was not resisting arrest. (*Id.*). However, Hughes beat Hawn severely. (*Id.*). Hughes beat Hawn until he was unconscious. (*Id.*). Hughes' beating fractured several bones in Hawn's face. (*Id.*).

The forced used against Hawn by Defendant Hughes was completely unwarranted. (*Id.* at ¶ 4). Hawn was not behaving in a disorderly or violent manner. (*Id.*). Hawn did not pose a threat to the safety of any person. (*Id.*). Hawn was not resisting arrest or attempting to flee. (*Id.*). There was no legitimate justification for Defendant Christopher Hughes' use of force against Hawn. (*Id.* at ¶ 5). Hughes' attack against Hawn was unprovoked and unjustified. (*Id.*).

Hawn was physically injured as a result of Hughes' use of force. (*Id.* at ¶ 6). Hawn sustained several fractures of his facial bones as a result of the beating. (*Id.*). Hawn received various abrasions and bruises and a contusion of his chest wall. (*Id.*).

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A plaintiff who shows that there is no genuine issue of fact and that plaintiff is entitled to judgment

as a matter of law is entitled to summary judgment. *See, e.g., Vais Arms, Inc. v. Vais*, 383 F.3d 287, 291 (5th Cir. 2004).

Although the Court will consider all facts and inferences in the light most favorable to the non-moving party, "the nonmoving party may not rest upon mere denials or allegation, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). To this end, "the mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient." *Anderson,* 477 U.S. at 248. It is clear then that a "metaphysical doubt" with respect to the existence of a genuine issue of triable fact is not enough to preclude summary judgment. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). In *Matsushita,* the Supreme Court state that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## IV. ARGUMENT

**A.** **All Plaintiffs are Entitled to Summary Judgment as to Hughes' Liability for Excessive Force.**

Excessive force claims are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394, (1989). In Fourth Amendment excessive force cases, the reasonableness question amounts to "whether the totality of the circumstances justifies a particular sort of seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9, (1985). The Court should consider several factors such as the severity of the alleged crime, whether the actor posed an immediate threat to safety and whether the actor is attempting to evade arrest or flee. *Graham*, 490 U.S. at 396. The sole question is whether the force is

8

"objectively reasonable" under the facts confronting the officer, without regard to the officer's subjective motivation. *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).

The Court may draw an adverse interest against a party in a civil case who invokes his Fifth Amendment privilege against self-incrimination. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008). A grant of summary judgment based exclusively on invocation of the Fifth Amendment privilege would "unduly penalize the employment of the privilege." *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979) (citing *8 C. Wright & A. Miller*, Fed. Prac. & Proc. § 2018, at 148 (1970)). However, summary judgment may be predicated on the adverse inference where there is "independent evidence" of the facts to which the party refused to answer. *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 Fed. Appx. 444, 446 (5th Cir. 2013). That is, where other evidence supports the facts and Defendant also invokes the Fifth Amendment privilege, the Court should draw an adverse inference against Defendant at the summary judgment stage. *See, e.g., LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995); *Peiffer v. Lebanon Sch. Dist.*, 848 F.2d 44, 46 (3d Cir. 1988); *Doe v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000).

Plaintiffs in this case have each presented compelling, and overwhelming, indisputable evidence that Hughes used excessive force against them. Plaintiffs have presented sworn testimony that Hughes used force against them for no reason whatsoever and that his application of any force was entirely unjustified. Most Plaintiffs have photographs of their injuries. All Plaintiffs received medical treatment because of Hughes' excessive force.

Hughes does not dispute Plaintiffs' testimonies. Hughes will be able to present no record evidence contradicting Plaintiffs' proof. Hughes cannot avoid summary judgment by resting on his denials. Rather, Hughes must come forward with admissible evidence showing that his use

9

of force was "objectively reasonable." Hughes can present no evidence in this regard. Hughes can present nothing disputing Plaintiffs' testimony.

Further, aside from having no substantive evidence to offer, Hughes refused to respond to questions about the excessive force perpetrated on Plaintiffs during his deposition. Hughes invoked his Fifth Amendment privilege as to each incident. As explained in *Baxter* and myriad Circuit Court opinions, the Court should draw an adverse inference against Hughes based on his invocation of his Fifth Amendment privilege. There is strong independent evidence of the excessive force in this case, justifying an adverse inference supporting summary judgment against Hughes.

Because of the undisputed record-evidence, and the adverse inference as a result of Hughes' invoking his Fifth Amendment privilege, there is no genuine issue of material fact in this case. All Plaintiffs are entitled to judgment as a matter of law on their claims for excessive force.

Plaintiffs request the Court to grant partial summary judgment, as to Hughes' liability, and to instruct a jury to determine each Plaintiff's damages.

**B.     Plaintiffs Moore and Horton are Entitled to Summary Judgment on Their Claims for Arrest Without Probable Cause.**

An arrest without probable cause likewise violates the Fourth Amendment and is a basis for liability under 42 U.S.C. § 1983. *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. Tex. 2003); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). "For warrantless arrests, the test for whether the 'police officer ha[d] probable cause to arrest [is] if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

Simply put, an arrest must be supported by probable cause. *United States v. Shugart*, 117 F.3d 838, 846 (5th Cir. 1997). The Fifth Circuit has explained that probable cause exists "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999).

There was no probable cause whatsoever for Hughes' arrests of Ronnie Horton and Matilda Moore. Neither Horton nor Moore committed any crime and no reasonable officer could have believed they had done so. Horton was unconscious due to a medical condition. Hughes arrested Horton and beat him for no reason. Moore was the passenger in a car in which the driver was arrested on suspicion of driving under the influence. However, rather than release Moore, Hughes took her into custody and had her strip searched.

Again here, just as in the analysis for the excessive force claims, the record-evidence that Hughes arrested Horton and Moore without probable cause is undisputed. Hughes cannot rest on his denials, but must present evidence showing a disputed issue of fact. Further, Plaintiffs are entitled to an adverse inference against Hughes based on his invocation of his privilege against self-incrimination.

Accordingly, Plaintiffs Horton and Moore are also entitled to summary judgment on their claims for arrest without probable cause. Plaintiffs request the Court to grant partial summary judgment, as to Hughes' liability on these claims, and to instruct a jury to determine each Plaintiff's damages.

11

## V. CONCLUSION

Defendant Hughes cannot produce any evidence showing a disputed fact for trial. The undisputed evidence shows that Hughes is liable as a matter of law to all Plaintiffs for excessive force and additionally liable to Matilda Moore and Ronnie Horton for arrest without probable cause.

In light of the indisputable record evidence, together with the adverse inference resulting from Hughes' invoking his Fifth Amendment privilege, the Court should grant partial summary judgment to Plaintiffs. The Court should find Hughes liable on all of the claims raised in the Complaint as a matter of law and try the issue of damages to a jury.

**RESPECTFULLY SUBMITTED**, this the 31st day of March, 2015.

### MCLAUGHLIN LAW FIRM

By: /s R. Shane McLaughlin
R. Shane McLaughlin (Miss. Bar No. 101185)
Nicole H. McLaughlin (Miss. Bar No. 101186)
338 North Spring Street, Suite 2
P.O. Box 200
Tupelo, Mississippi 38802
Telephone: (662) 840-5042
Facsimile: (662) 840-5043
E-mail: rsm@mclaughlinlawfirm.com

**WAIDE & ASSOCIATES, P.A.**
Jim Waide (Miss. Bar No. 6857)
Rachel Pierce Waide (Miss. Bar No. 100420)
Waide & Associates, P.A.
Post Office Box 1357
Tupelo, Mississippi 38802
Telephone: 662-842-7324
Facsimile: 662-842-8056
Email: waide@waidelaw.com

Victor I. Fleitas
Attorney at Law
Post Office Box 7117
Tupelo, Mississippi 38802
Telephone: 662-840-0270
Facsimile: 662-840-1047
Email: fleitasv@bellsouth.net

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      I certify that I have this day electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification to the following:

**Jason D. Herring**
**Attorney at Law**
**Post Office Box 842**
**Tupelo, Mississippi 38802**

**Justin L. Matheny**
**Special Assistant Attorney General**
**Office of the Attorney General**
**P.O. Box 220**
**Jackson, MS 39205**

**Robert E. Sanders**
**Young Wells Williams P.A.**
**P.O. Box 23059**
**Jackson, MS 39225-3059**

**Philip Halbert Neilson**
**Attorney at Law**
**Post Office Box 1860**
**Oxford, MS 38655-1860**

This, the 31st day of March, 2015.

                                                 /s R. Shane McLaughlin