IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN A. HAWN, BRYAN LINDSEY,
HEATHER SEAWRIGHT, RONNIE HORTON,
and MATILDA MOORE                                                                                  PLAINTIFFS

v.                                                          CAUSE NO. 1:13-CV-000036-NBB-DAS

CHRISTOPHER (C.G.) HUGHES,
in His Individual Capacity; and
MICHAEL BERTHAY, in His Individual Capacity                                        DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court on the plaintiffs' motion for partial summary judgment regarding claims against defendant Christopher Hughes. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiffs, John Hawn, Bryan Lindsey, Heather Seawright, Ronnie Horton, and Matilda Moore bring this motion against defendant Christopher Hughes, a former Mississippi Highway Patrol officer, alleging Hughes exerted excessive force while attempting to arrest each plaintiff. Additionally, plaintiffs Moore and Horton assert Hughes initiated their arrest without probable cause. In consideration of this motion and the evidence presented in support, each plaintiff's sworn narrative will be recalled separately.

*John A. Hawn*

John A. Hawn declares, that on July 16, 2012, he drove toward a highway security checkpoint set by two Mississippi Highway Patrol officers, one being Christopher Hughes. Hawn states, upon approach, he drove around the checkpoint, though he does not offer an explanation as to why. Once on the other side, Hawn stopped his vehicle. Hawn alleges that

Hughes approached the vehicle and physically removed Hawn from the vehicle. Hawn alleges Hughes then beat him until he lost consciousness. He asserts he incurred fractured facial bones, bruises and abrasions, and a contused chest wall.

*Bryan Lindsey*

Bryan Lindsey declares that he drove toward a highway safety checkpoint on October 17, 2010, set by multiple Mississippi Highway Patrol officers, one being Christopher Hughes. Lindsey alleges that Hughes arrested and handcuffed him without explanation. Lindsey says he asked Hughes why he was being arrested. Hughes offered no answer, but instead began to beat Lindsey. Additionally, Lindsey alleges Hughes slammed his head against the patrol car and threw him to the ground. The impact allegedly fractured Lindsey's skull. Hospital photographs show a deep gash between Lindsey's eyebrows. Lindsey alleges he incurred other immediate and lingering injuries as a result of the encounter.

On October 29, 2010, a "Use of Force" memorandum was filed by Major Miley of the Mississippi Highway Patrol regarding the incident, stating that Hughes' flashlight strike used to "subdue" Lindsey was "unnecessary." An additional "Use of Force" memorandum regarding this incident was filed by Lieutenant Brown of the Mississippi Highway Patrol describing Trooper Hughes' methods as "extreme and unnecessary."

*Heather Seawright*

Heather Seawright declares that she was pulled over on April 28, 2012, by Christopher Hughes, who arrested and transported her to the Lee County Adult Detention Center. Seawright states that she asked the officers to loosen her handcuffs and asked Christopher Hughes why she had been arrested. Hughes then allegedly struck Seawright in the face with his flashlight. Seawright states Hughes then "smashed" her head against the wall. Photographs show deep

bruising and abrasions around Seawright's right eye with additional abrasions on her nose and forehead. Seawright received medical attention for her injuries.

*Ronnie Horton*

Ronnie Horton declares that on August 4, 2011, he was driving in Lee County and lost consciousness due to a medical condition. No other details of the accident are described; however, Christopher Hughes responded to the scene. Upon arriving, Hughes allegedly struck Horton in the mouth causing Horton's mouth to bleed. When Horton asked Hughes why he hit him, Hughes responded antagonistically, "[do] you want some more?" As a result of the incident, Horton received medical treatment and physical therapy.

*Matilda Moore*

Matilda Moore declares she was a passenger in a car approaching a road block on a Mississippi highway. A highway patrolman —not Hughes — arrested the driver for suspicion of driving under the influence. Moore requested permission to drive herself home. The highway patrolman administered a breathalyzer and concluded he would need to take Moore in and release her at a later time. The patrolman took Moore to the Lee County Sheriff's Department and turned her over to Christopher Hughes. Moore was not suspected of, or charged with, a crime at the time.

At the Sheriff's department, Moore declares she witnessed an incident between a citizen and an officer that "scared" her. Afterward, Hughes took Moore into a room with a phone and directed her to call someone. A discussion between Hughes and Moore took place about the implications of making a phone call which culminated in Hughes placing Moore under arrest for resisting arrest. In doing so, Hughes grabbed Moore's left arm and maneuvered it behind her back and, as Moore states, pushed her against the wall "using the weight of his body." Moore

states Hughes made comments about his ability to break her arm. Hughes then had a female officer strip search Moore.

Hughes charged Moore with public drunkenness, resisting arrest, and two counts of disorderly conduct. Moore was released early the next morning. As a result of the incident, Moore sought medical attention, was prescribed medication, and attended physical therapy. Submitted photographs show extensive bruising on the underside of Moore's left arm from her elbow to her shoulder.

*Procedural History*

Plaintiff John A. Hawn filed this action on February 21, 2013, against defendant Hughes and three unknown supervisors of Hughes. On October 3, 2013, plaintiff Hawn amended his complaint to add four plaintiffs and one defendant. The four plaintiffs are, Bryan Lindsey, Heather Seawright, Ronnie Horton, and Matilda Moore, and the defendant is Michael Berthay, a former supervisor of Christopher Hughes.

The added defendant, Michael Berthay, filed a separate motion for summary judgment on January 28, 2014. On September 8, 2014, the court denied Berthay's motion. Consequently, the plaintiffs' claims against Michael Berthay will proceed to trial on the merits.

On March 31, 2015, the plaintiffs filed a motion for partial summary judgment concerning all claims against defendant Christopher Hughes. All plaintiffs allege Hughes exerted excessive force while placing them under arrest, and plaintiffs Moore and Horton allege Hughes initiated their arrest without probable cause. Together with their motion, the plaintiffs filed a memorandum and seventeen exhibits in support.

Hughes responded to the plaintiffs' motion for partial summary judgment on April 27, 2015, asserting his Fifth Amendment privilege "and all rights and privileges associated

therewith" and requesting that the court deny the plaintiffs' motion. Hughes provides no alternative account of any of the plaintiffs' narratives; nor does he provide any evidence in support of his request that the court deny the plaintiffs' motion.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. 56(c), (e)). To meet its burden, "the non-moving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986). No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushia Elec. Indus. Co. v. Zenith Radio*., 475 U.S. 574, 586 (1986). Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id*. at 249-50. "Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of his case*." Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If a party fails to properly support an assertion of fact or

fails to properly address another party's assertion of fact as required by rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2).

"As a preliminary matter, it should be noted that a party may invoke the privilege against self-incrimination in a civil proceeding." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012). In such an instance, the Supreme Court has cautioned that the Constitution limits "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein*, 385 U.S. 511, 517 (1967). More definitively, granting summary judgment exclusively on the basis of the invoked Fifth Amendment privilege would "unduly penalize the employment of the privilege." *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979). The Supreme Court, however, makes clear that invoking the Fifth Amendment "is not a substitute for relevant evidence," and a litigant claiming the privilege is not "freed from adducing proof in support of a burden which would otherwise have been his." *United States v. Rylander*, 460 U.S. 752, 758 (1983). Furthermore, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *See e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Hoover v. Knight*, 678 F.2d 578, 581-82 (5th Cir. 1982).

<u>Analysis</u>

The court analyzes this motion in light of defendant Hughes' inability, or refusal, to respond specifically to the plaintiffs' assertions of fact in their motion for summary judgment. As stated above, if a party fails to properly address another party's assertion of fact, the court may consider the facts undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Faced with the plaintiffs' accounts, defendant Hughes brought forth no sworn witness statement or even a scintilla of evidence in opposition to the narrative of each plaintiff; nor has the defendant

asserted with specificity which facts are disputed. For the purposes of this motion, the court considers the plaintiffs' assertions of fact as undisputed pursuant to Fed. R. Civ. P. 56(e)(2), and analyzes their claims accordingly.

a. Excessive force

When establishing excessive force in violation of the Fourth Amendment, a plaintiff must prove: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Elizondo v. Greene*, 671 F.3d 506, 510 (5th Cir. 2012). Claims against law enforcement for excessive force during the course of arrest, an investigatory stop, or other "seizures" are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Applying this standard requires the court to consider whether the force used was objectively reasonable in light of the facts and circumstances confronting the officer, regardless of the officer's subjective intent. *Id*. at 397.

With the circumstances presented, the court finds no objective reason why the inordinate amount of force described should have been exerted on any of the plaintiffs in this case, and furthermore, the resulting injuries presented by each plaintiff derived from the excessive and unreasonable amount of force used by the defendant Hughes, meeting the requirements of the *Elizondo* standard. In summary, plaintiffs Lindsey and Seawright were aggressively assaulted while in handcuffs resulting in Lindsey's fractured skull and Seawright's contused face. Plaintiff Horton was unconscious before being struck by Hughes. Plaintiff Hawn became unconscious while Hughes continued to beat him, and in doing so, Hughes fractured the bones in Hawn's face. Plaintiff Moore was deeply bruised while being placed in custody for questioning the implications of making a phone call inside the Lee County Sheriff's Department.

None of the plaintiffs posed a potential harm to defendant Hughes or others. Hughes' elevated physical response was therefore unquestionably without justification given the circumstances. Furthermore, on multiple occasions, defendant Hughes' superiors reported on, and took issue with, the excessive and extrajudicial nature of Hughes' methods. The court finds defendant Hughes violated each plaintiff's Constitutional rights by exerting excessive force in each instance.

b. Arrest without probable cause

Plaintiffs Moore and Horton have further alleged that defendant Hughes initiated their arrest without probable cause. Under 42 U.S.C. § 1983, an arrest without probable cause violates the Fourth Amendment and is a basis for liability. *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. Tex. 2003); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). To determine whether an arrest was conducted absent probable cause, the court must ask whether the "police officer ha[d] probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

Matilda Moore was initially arrested for resisting arrest. Former officer Hughes walked Matilda Moore to a room with a phone instructing Moore to call someone. Moore then asked Hughes why she would need to call someone if she had done nothing wrong and had earlier been told that she would be released. Hughes replied, "[n]ow you have an attitude [and] now you are resisting arrest." After cuffing Moore, while pressing her against the wall, Hughes stated; "I could just break your arm." It is clear from the narrative of this encounter that Hughes' arrest was not based on whether a crime had been or was being committed, but rather for the purposes

of harassing and intimidating Moore. This court finds there is sufficient evidence under the applicable standard to determine that former officer Hughes initiated the arrest of Matilda Moore without probable cause.

Ronnie Horton also alleges he was arrested without probable cause. Horton was driving in Lee County and lost consciousness due to a medical condition. Christopher Hughes responded to the scene. Upon arriving, Hughes struck Horton in the mouth causing Horton's mouth to bleed. When Horton asked Hughes why he hit him, Hughes responded antagonistically, "[do] you want some more?" Hughes arrested Horton and incarcerated him in the Lee County jail. Horton was released soon thereafter and was not charged with or convicted of any offense related to this incident. This court determines there is sufficient evidence, pursuant to the applicable standard, to find that former officer Hughes initiated the arrest of Ronnie Horton without sufficient probable cause.

Defendant Hughes has not set forth any specific facts which indicate a genuine issue for trial. The defendant's only response to summary judgment is to invoke his Fifth Amendment right against self-incrimination. Hughes has produced no evidence. The defendant's invocation of his Fifth Amendment privilege alone is not a substitute for relevant evidence showing the defendant has competently met his burden to respond to the plaintiffs' motion. The court finds no genuine issue of material fact in this case, and the plaintiffs' motion for partial summary judgment as to the liability of Christopher Hughes should be granted.

## Conclusion

For the foregoing reasons, the court finds that the plaintiffs are entitled to partial summary judgment as to liability on the claims against defendant Christopher Hughes. A separate judgment in accordance with this opinion shall issue this day. Furthermore, the

remaining issues in this matter—the liability, if any, of Hughes' supervisor, Michael Berthay, and the amount of damages— are set for trial on, April 25, 2016.

This, the 30th day of March, 2016.

*Neal Biggers*
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**